JUSTICE GRAY,
dissenting.
I respectfully dissent from the Court’s opinion on both issues presented therein. I write separately because the reasons for my dissent are not altogether identical to those which form the basis for Justice Weber’s dissent.
With regard to issue one, I conclude that the franchise agreement entered into between the Casarottos and DAI was governed by Connecticut law. It is my view that the Court’s analysis of this issue is incomplete and erroneous.
I agree with the Court’s synopsis of our decision in Emerson v. Boyd and, on the basis that the agreement before us does include a choice of law provision, on the inapplicability of that decision to the case before us. In my view, Youngblood also is not on point here, since that case did not relate to whether a statute represents a statement of public policy by the Montana legislature and, if so, the extent of that statement of public policy.
I agree with the Court that Montana has a materially greater interest than Connecticut in the contract issue presented and that, absent an “effective” choice of law by the parties, Montana law would apply. I disagree with the remainder of the Court’s discussion and analysis on this issue.
My primary concern is that the Court neither presents nor discusses the specific language contained in the statutory notice requirement. That statute provides that “[n]otice that a contract is subject to arbitration pursuant to this chapter shall be typed in underlined capital letters on the first page of the contract; ....” Section 27-5-114(4), MCA. By its terms, the franchise agreement before us is subject to Connecticut law, not “this chapter” — the MUAA. The legislature’s specific limitation on the applicability of the notice requirement is clear and unambiguous; under such a circumstance, we are obligated to so interpret it (Curtis v. Dist. Court of 21st Jud. Dist. (Mont. 1994), 879 P.2d 1164, 1166, 51 St.Rep. 776, 778) and conclude that the notice requirement is not applicable to the contract before us. Since the statute is inapplicable by its terms to the contract, it cannot form the basis of a public policy broad enough to negate the parties’ choice of Connecticut law.
The Court does not even address the specific statutory language, preferring to resort inappropriately to generalized legislative history for its overly broad interpretation of the extent to which the notice *393 requirement applies and the extent to which the legislature adopted the notice requirement as a public policy. Had the legislature intended the notice requirement to apply to every arbitration agreement entered into by a citizen or resident of Montana, notwithstanding that some other jurisdiction’s law would otherwise apply, it would have done so; it did not. It is inappropriate for the Court to judicially broaden the legislature’s clear statute in the guise of a conflict of law analysis.
With regard to issue two, I conclude that even if the Court were correct regarding the applicability of Montana’s notice requirement under conflict of law principles, that requirement is preempted by the Federal Arbitration Act (FAA). Therefore, I also dissent from the Court’s opinion on this issue.
The Court suggests that the United States Supreme Court’s Volt decision was a departure from its earlier Southland /Perry line of cases. It then presents an inadequate analysis of Volt. Finally, the Court concludes, purportedly under a Volt analysis, that Montana’s notice requirement does not undermine the goals and policies of the FAA. Nothing could be farther from the truth.
In Southland, the United States Supreme Court was faced with a California statute which required judicial consideration of certain claims brought under it; the California courts held that the statute precluded arbitration under an agreement containing an arbitration provision. Determining that the FAA was a substantive rule applicable in state courts by which Congress intended “to foreclose state legislative attempts to undercut the enforceability of arbitration agreements,” the Supreme Court held that the California statute violated the supremacy clause. Southland was decided in 1984.
In 1987, the Supreme Court decided Perry, another California case involving a different California statute which — by its terms — provided that legal actions for the collection of wages could be maintained notwithstanding an agreement to arbitrate such claims. Again the California courts denied a motion to compel arbitration under the parties’ agreement, favoring their legislature’s effort to render arbitration agreements unenforceable. And again the United States Supreme Court reversed, quoting its Southland language that Congress intended to foreclose state legislatures from undercutting the enforceability of arbitration agreements. For additional clarity, the Supreme Court added “ “We see nothing in the [FAA] indicating that the broad principle of enforceability is subject to any additional limitations under state law.’”Perry, 482 U.S. at 489-90, 107 S.Ct. at 2525-26 *394 (citations omitted). Southland and Perry are, as the Court notes, consistent with each other.
In 1989, the Supreme Court decided Volt. There, faced with yet another California statute and another decision from the California courts denying a motion to compel arbitration on the basis of the state statute, the Supreme Court affirmed. Contrary to this Court’s suggestion, Volt is entirely consistent with — and not a retrenchment from — Southland and Perry. All three cases require this Court to conclude that Montana’s notice requirement is preempted by the FAA.
In Volt, the parties had specifically agreed to submit disputes under their contract to arbitration under the California arbitration statutes. The California arbitration statute at issue in Volt differed markedly from those in Southland and Perry. As noted above, the earlier cases involved statutes which clearly undercut the enforceability of arbitration agreements. In Volt, however, the statute — part of the California Arbitration Act — merely allowed a court to stay arbitration pending resolution of related litigation; the right to arbitrate remained. The issue before the Supreme Court was the same as in the earlier cases: whether the stay provision would undermine the goals and policies of the FAA.
The Supreme Court reiterated that the purpose of the FAA was to enforce arbitration agreements entered into by parties, and specifically noted the parties’ agreement to apply California’s arbitration rules, one of which permitted the stay of arbitration pending related litigation. On these facts, including the parties’ choice of California arbitration law and that that law permitted a stay — but not a voiding — of arbitration, the Supreme Court held that enforcing the California stay provision did not frustrate the policy behind the FAA of enforcing arbitration agreements.
The Court’s opinion fails — or refuses — to recognize two important differences between Volt and the case presently before us. First, the Supreme Court in Volt relied heavily on the fact that the parties had affirmatively chosen California arbitration law, including the stay statute, to govern their agreement. Second, the stay statute did not undercut, undermine or render unenforceable the parties’ agreement to arbitrate.
Here, the parties did not affirmatively choose Montana arbitration law, which includes the notice requirement, to govern their agreement. They chose Connecticut law.
*395 Moreover, it is clear under Southland, Perry and Volt that Montana’s notice requirement is preempted by the Federal Arbitration Act. The reason for this constitutes the second important difference between this case and Volt: here, the application of the notice requirement is not merely a procedural matter; indeed, it totally undermines the purposes of the FAA by rendering the parties’ arbitration agreement unenforceable. This is precisely the result prohibited by the United States Supreme Court in all three of the cases discussed herein and in the Court’s opinion on this issue.
I would affirm the District Court’s grant of defendants’ motion to stay judicial proceedings pending arbitration of plaintiffs’ claims.
CHIEF JUSTICE TURNAGE joins in the foregoing dissent of Justice Karla M. Gray.